UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:25CR360 HEA (SPM) |
| | ) | |
| LAMAR COTTON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION AND**
**MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

This matter was referred to the undersigned United States Magistrate Judge for all pretrial

matters pursuant to 28 U.S.C. §636(b), and is currently before this Court on Defendant Lamar

Cotton's Motions to Suppress and Disclose Confidential Source [ECF No. 22], Amended Motion

to Suppress information obtained via Search Warrants [ECF No. 36], and Supplemental Motion to

Disclose Confidential Sources 1, 2, and 3 [ECF No. 40]. The United States has filed responses

opposing Defendant's motions. *See* ECF Nos. 23, 41 & 43.

Although Defendant's motions are far from clear, it appears Defendant seeks to suppress

evidence seized pursuant to search warrants executed at two residences that were associated with

him. Defendant also seeks an order requiring the United States to disclose the identities of three

confidential sources referenced in the affidavit filed in support of the two residential search

warrants. Defendant and the United States stipulated there was no need for this Court to conduct

an evidentiary hearing and, to that end, stipulated to the authenticity and admissibility of the

application, affidavit, and residential search warrants at issue in this case. *See* ECF No. 45, at ¶¶4,

6 & 7.  The parties also stipulated that the Court need not look beyond the four corners of the

search warrant affidavit to determine whether, as Defendant contends, the residential search warrants lacked probable cause. *Id.* at ¶8. Counsel for both parties also agreed to rely exclusively on their written submissions regarding Defendant's motion to disclose confidential sources.

This Court has carefully considered the entire evidentiary record, applicable case law, and the parties' written submissions and oral arguments. For the reasons more fully discussed below, this Court finds that, Defendant's suppression motion fails because the residential search warrant were supported by probable cause and, even if they weren't sufficiently supported by probable cause, Defendant has neither demonstrated nor even attempted to argue that his suppression motion can survive the good faith exception to the exclusionary rule articulated in *United States v. Leon,* 468 U.S. 897 (1984). This Court further finds that, for the reasons more fully discussed below, Defendant has failed to satisfy his burden of demonstrating that he is entitled to know the identities of the confidential informants referenced in the search warrant affidavit.

## **BACKGROUND**

A federal grand jury charged Defendant Lamar Cotton, Jr. with one count of distributing more than 50 grams of actual methamphetamine in St. Louis County on or about January 8, 2024, and one count of possession with intent to distribute controlled substances, namely, methamphetamine and fentanyl, in St. Louis County, on or about January 24, 2024. *See* ECF No. 2.  Cotton was arrested on July 14, 2025, and made his first appearance and was arraigned on the same date. Through counsel, Cotton requested, and was initially granted, time through August 28, 2025, to file or waive pretrial motions. ECF No. 11.  Cotton was granted additional time to file pretrial motions and, on October 27, 2025, Cotton filed the Motion to Suppress and Disclose Confidential Source (ECF No. 22) currently pending before the Court.

On November 10, 2025, the United States filed its response opposing Cotton's Motion. In its response, the United States argued that there was no need for a hearing as there are no issues requiring witness testimony or information not already in the record before the Court. ECF No. 23. The Court set the matter for a hearing, including the question of whether an evidentiary hearing would be necessary. ECF No. 24. On December 3, 2025, the parties appeared for the hearing and Defendant, through counsel, indicated that the parties had likely reached a resolution and moved to withdraw his Motion to Suppress and Disclose Confidential Source.  *See* ECF Nos. 26 & 27. Defendant also requested additional time to decide whether he would waive the filing of all pretrial motions.  ECF No. 29. The Court granted Defendant's motion to withdraw the pending motion, without prejudice to refiling, and granted Defendant and counsel a brief extension, through December 8, 2025, to decide whether to pursue the withdrawn motion or any other pretrial motion. ECF No. 30.

On December 8, 2025, Defendant filed a Notice indicating he intended to proceed with the previously withdrawn Motion to Suppress and Disclose Confidential Source and requested that the Court consider the previously withdrawn motion "as originally filed, as if newly filed." ECF No. 31. Based on Defendant's reassertion of his previously withdrawn motion, this Court set a hearing on the issue of whether an evidentiary hearing would be necessary. On December 16, 2025, Defendant appeared with counsel for the hearing and, through counsel, made an oral motion for time through January 6, 2026, to supplement his previously filed pretrial motion. *See* ECF No. 35. The United States, represented by Assistant United States Attorney Dane Rennier, did not oppose the motion but requested, and was granted, time through January 19, 2026, to respond to any supplemental motion. *See id.*

On January 5, 2026, Defendant filed an Amended Motion to Suppress Search Warrants for Insufficiency in the Affidavit. ECF No. 36. On January 6, 2026, Defendant filed a Supplemental Motion to Disclose Confidential Sources 1, 2, and 3. ECF No. 38. On January 13, 2026, the United States filed its response opposing Defendant's Amended Motion to Suppress. ECF No. 41. On February 10, 2026, the United States filed its response opposing Defendant's Supplemental Motion to Disclose Confidential Sources 1, 2 and 3. ECF No. 42. In response to an order by the Court, on March 3, 2026, the parties filed a Notice of Stipulation indicating that no evidentiary hearing would be necessary. ECF No. 45.

Although Defendant initially filed a single motion seeking both suppression of evidence and disclosure of confidential sources, *see* ECF No. 22, Defendant's subsequent filings make clear that these are two discrete and separate motions.[1] As such, the Court will address the requested relief as two separate motions.

### I. MOTION TO SUPPRESS [ECF Nos. 22 & 36]

As best as this Court can determine,[2] Defendant seeks an order suppressing evidence law enforcement seized pursuant to search warrants issued for 9453 Pickford Place, Jennings, MO 63136 ("Pickford Address") and 10322 Lilac Road, St. Louis, Missouri ("Lilac Address") during

---

[1] For example, in his Amended Motion to Suppress Search Warrants for the Insufficiency of the Affidavit, Defendant noted "This motion to suppress search warrants has no arguments for the disclosure of the confidential informants." ECF No. 36, at p. 1. Defendant subsequently filed a separate Supplemental Motion requesting that the Court order the United States to disclose to Defendant "the identity and relevant discovery of Confidential Sources 1, 2, and 3, or in the alternative, enter an Order that the government provide all necessary information should these individuals be called at trial." ECF No. 40, at p. 3-4.

[2] Defendant's motion does not state with specificity what evidence he is seeking to suppress. Instead, Defendant's motion requests that the Court "vacate, quash, suppress and adjudge . . .[as] insufficient, vague and devoid of corroborative facts" the "search warrants and items retrieved as a result of the search warrant." ECF No. 36, at p. 6. Defendant's failure to specify the evidence to which the motion is addressed contravenes this Court's Order Concerning Pretrial Motions and is reason alone to disregard Defendant's motion as insufficient. *See* ECF No. 11, at p. 3.

the investigation that led to the indictment in this case. Defendant contends the "search warrants and items retrieved as a result of the search warrant" should be suppressed because the warrant affidavit was "insufficient, vague and devoid of corroborative facts." ECF No. 36, at p. 6.

### A. FACTUAL FINDINGS

Based on the facts stipulated by the parties, at all relevant times, Tyler Fox was a Special Agent with the Drug Enforcement Administration ("DEA"). ECF No. 45, ¶1. On or about January 18, 2024, Agent Fox met over video with the Honorable Stephen Welby, U.S. Magistrate Judge, and swore to the contents of an affidavit submitted in support of residential search warrants for the Pickford and Lilac Addresses. *Id.* at ¶3. To the best of Agent Fox's knowledge, at the time he signed the affidavit all the information contained in the affidavit was true and accurate. *Id.* at ¶4. Except for the information contained in the affidavit, Agent Fox did not share any information about the investigation with Magistrate Judge Welby.

In the search warrant affidavit, Agent Fox attested that he had been a Special Agent with the DEA since 2019. *See* ECF No. 43-1, ¶2. He detailed his training and experience and attested that the facts in the affidavit came from his personal observations, his training and experience and information obtained from agents and witnesses. *Id.* at ¶4.

Regarding the investigation into Defendant, Agent Fox attested that in late October 2023, investigators developed a confidential source, CS-1, who identified Arthur Widman as a source of pound quantities of crystal methamphetamine. *Id.* at ¶8. CS-1 informed investigators that his/her purchases from Widman occurred at Widman's house at 3116 Hawthorne Blvd. in Alton, Illinois. *Id.* Investigators subsequently used CS-1 to conduct controlled purchases of methamphetamine from Widman on November 8, 2023, and December 5, 2023. *Id.* at ¶8.

After the controlled-buy on November 8th, investigators conducted surveillance of Widman and, ultimately, followed him to a steakhouse in Alton, Illinois. *Id.* at ¶¶8-9. At the steakhouse, investigators observed what appeared to be a rendezvous between Widman and two unidentified men in a black BMW. Specifically, agents observed Widman drive to the steakhouse and park in the parking lot. *Id.* at ¶9. After speaking on his cell phone, Widman then moved his car to the back of the steakhouse and parked near a black BMW with Kansas license plates. *Id.* Investigators then observed Widman get out of his car, approach the driver's side window of the BMW, and then walk back to his vehicle. *Id.* Both the BMW and Widman's vehicle left the area. *Id.* Investigators followed the BMW to the Pickford address. *Id.*

Investigators conducted a second purchase of methamphetamines from Widman on December 5, 2023, utilizing CS-1, who was accompanied by a second confidential source, CS-2. *Id.* at ¶10. CS-1 and CS-2 arrived at Widman's Hawthorne Blvd. address at approximately 3:29 PM. *Id.* About twenty-five minutes after CS-1 and CS-2 arrived at Widman's house, investigators saw a red Audi stop in front of Widman's house and observed Widman approach the passenger window and confer for a few minutes with the Audi's occupant(s). *Id.* Investigators believed, but because of poor lighting on the street could not confirm, that a hand-to-hand transaction occurred between Widman and the Audi's occupant(s). *Id.* CS-1 later told investigators that Widman went out and met with someone and when he returned he came back with the methamphetamine. *Id.*

During the controlled purchase with Widman on December 5, 2023, at approximately 3:59 PM, investigators began surveillance of the red Audi. *Id.* at ¶11. They obtained the license plate and followed it from Alton, Illinois into Missouri. *Id.* Ultimately, investigators observed the Audi back into the driveway of the Pickford address. *Id.* Investigators observed an unidentified black male exit the Audi, collect the trash bin and enter the Pickford address. *Id.* At approximately 4:32

6

PM, an investigator observed the same unidentified black male exit the Pickford address, get in the red Audi, and drive to the Lilac Road address. *Id.* at ¶12. The unidentified male backed up under a carport and parked. *Id.*

In the affidavit, Agent Fox attested that investigators identified Defendant Cotton, first, by conducting a records check with the Missouri Department of Revenue for the black BMW and red Audi. *Id.* at ¶13. They learned that both vehicles were registered to Enterprise Rentals and rented by Brittney Ford. *Id.* Investigators also conducted surveillance of the Lilac address on December 7, 2023. They observed a gray Volkswagen SUV in the driveway. *Id.* at ¶14. A records check revealed that the Volkswagen was registered to Lamar Cotton and Chelsea Cochran. *Id.* An investigator saw a black male exit the Lilac address, retrieve an item from the Volkswagen, and then enter the same red Audi investigators had observed during the controlled purchase on December 5, 2023. *Id.* In addition to the foregoing investigative efforts, Agent Fox conducted toll analysis on Widman's phone and identified two phone numbers Widman was in contact with during and immediately near the time of each of the controlled purchases on November 8, 2023, and December 5, 2023. *Id.* at ¶¶15-16.

A third confidential source, CS-3, told investigators that for the past few months he/she had been obtaining crystal methamphetamine from an individual known to the source only as "Peanut." *Id.* at ¶16. CS-3 provided investigators with both an old phone number and a new phone number for "Peanut" and the "old phone number" matched one of the two phone numbers identified by Agent Fox in Widman's tolls around the time of the controlled purchases. *Id.* CS-3 later confirmed to Agent Fox that a photograph of Defendant depicted the person known to the CS as "Peanut." *Id.*

7

On January 8, 2024, investigators utilized CS-3 to conduct a controlled purchase of methamphetamines from Defendant at the Lilac address. *See id.* at ¶¶18-19, 21, 23 & 27. In anticipation of this controlled purchase, investigators established surveillance on both the Pickford and Lilac addresses. *Id.* at ¶18. The affidavit details the investigators' observations during their surveillance of the two target locations and Defendant before, during, and after the controlled purchase on January 8, 2024. *Id.* at ¶¶18-29. The affidavit includes a description of suspected drug transactions between Defendant and individuals other than CS-3 on January 8th. *See id.* at ¶¶20, 24-26 & 28-29.

Agent Fox attested that, based on his training and experience, Defendant's activities observed by investigators are "consistent with [Defendant] conducting multiple sales of controlled substances" and that "each encounter, usually lasting less than two minutes, was a drug sale." *Id.* at ¶31. Agent Fox also attested to the evidence or contraband that would likely be secreted in the two target locations based on the collective training and experience of the investigative team. *Id.* at ¶33.

### B.   CONCLUSIONS OF LAW

Because Defendant's suppression motion challenges the sufficiency of the residential search warrants, this Court's analysis begins with a review of the warrants and supporting affidavit.

#### 1.  Legal Standard for Review of Search Warrants

"Issuance of a search warrant must be supported by probable cause, which depends on whether, under the totality of the circumstances, there is fair probability evidence of a crime will be found in a particular place." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013)). Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily,

or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause may be found in hearsay statements from reliable persons, *Gates*, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, *Draper v. United States*, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, *McDonald v. United States*, 335 U.S. 451, 454 (1948). While these are some of the common ways in which probable cause is established, they are not all-inclusive.

Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. *Gates*, 462 U.S. at 230. It is well-established that, when the issuing judge relies on the supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citations and quotations omitted); *see also United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014); *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995).

After a judicial officer has issued a warrant upon a finding of probable cause, that finding normally deserves great deference. *Gates,* 462 U.S. at 236. Thus, "[t]he affidavit should be examined under a commonsense approach that is not in a hyper technical fashion." *Solomon,* 432 F.3d at 827 (citation and quotations omitted). *See also United States v. Ventresca,* 380 U.S. 102, 109 (1965); *Gladney,* 48 F.3d at 312 (explaining that "[a]ffidavits must be read in a common-sense and realistic fashion") (citations and quotations omitted). In applying this principle when reviewing the issuance of a warrant, this Court "afford[s] great deference to the issuing judge's probable-cause determination, ensuring only that the judge had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing." *United States v. Petruk,* 929 F.3d

9

952, 959 (8th Cir.) (citations and quotations omitted; emphasis supplied), *cert denied,* 589 U.S. 1065 (2019); *see also United States v. Daigle,* 947 F.3d 1076, 1081 (8th Cir. 2020) (citations and quotations omitted).

Where the search warrant affidavit is based substantially on information provided by an informant, evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to, but is not dispositive of, the probable cause determination. *Gates,* 462 U.S. at 230. The Eighth Circuit has identified several factors the court should consider in determining whether information from an informant is reliable. For example, "[a]n informant's tip can be sufficient to establish probable cause if the informant 'has a track record of supplying reliable information' or if the tip 'is corroborated by independent evidence.'" *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). The Eighth Circuit has also held that "there are indicia of reliability in 'the richness and detail of a firsthand observation.' " *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (quoting *United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990); *see also Gates*, 462 U.S. at 234 (finding that an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight"); *Williams*, 10 F.3d at 594 (noting that source's information was timely and "based on the informant's first-hand observations, not merely from rumor or innuendo"). Furthermore, "[t]he circumstances of personal questioning may also enhance reliability and credibility." *Buchanan,* 574 F.3d at 562; *see also United States v. Robertson*, 39 F.3d 891, 893 (8th Cir. 1994) (stating the reliability of a tip is enhanced when a law enforcement officer meets personally with the informant to assess his credibility).

## 2. The Lilac and Pickford Warrants Were Supported by Probable Cause

Based upon the facts contained within the four corners of the affidavit, this Court finds the Lilac and Pickford warrants were supported by probable cause. Specifically, Agent Fox's search warrant affidavit established that, based on the totality of circumstances, investigators had reason to believe that Defendant Cotton, and perhaps others connected to the Pickford and Lilac addresses, supplied methamphetamine to Arthur Widman, who sold multiple pounds of methamphetamine to CS-1 during controlled purchases on November 8, 2023, and December 5, 2023. For example, the affidavit describes surveillance by investigators that connected Widman and the controlled buys with CS-1 to Cotton, the Pickford address, and the Lilac address. The warrant affidavit also describes a controlled buy on January 8, 2024, between CS-3 and Cotton and describes surveillance by investigators before, during, and after the January 8, 2024, controlled buy. The observations detailed in the warrant affidavit support the conclusion by investigators, including Agent Fox, that based on training and experience, what the investigative team observed was consistent with Cotton using the target residences to facilitate trafficking in controlled substances to CS-3 and others.

Defendant's argument that the affidavit is insufficient, vague, and relies on speculation and conjecture is unavailing. As the factual findings and a review of the warrant affidavit reveal, on January 8, 2024, Defendant was observed by investigators engaging in drug trafficking activities via a controlled buy utilizing CS-3. Investigators' observations on January 8, 2024, and during earlier controlled purchases between Widman and CS-1 also connected Defendant's suspected drug trafficking activities to the Pickford and Lilac addresses. Although investigators utilized confidential sources and relied on information they provided, the affidavit makes clear that information from those sources was independently corroborated, in whole or in part, by the

11

investigators. Indeed, "an informant who is correct about some things more likely will be correct about critical unverified facts." *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986). "[W]here the informant's information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause." *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992).

For the foregoing reasons, Judge Welby's decision to issue the warrants for the Pickford and Lilac addresses was supported by probable cause.

### 3. *The Good Faith Exception Applies*

Evidence seized from the Pickford and Lilac addresses would be admissible under the *Leon* good faith exception even if this Court somehow concluded that the affidavit did not establish probable cause. *United States v. Leon,* 468 U.S. 897, 922 (1984). As the Eighth Circuit recognized in *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015), there are four instances where the *Leon* good faith exception does not apply: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Id.* Defendant has not argued, and cannot demonstrate based on the record, that any of the *Leon* exceptions apply here.

The good-faith inquiry asks, "whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Escudero*, 100 F.4th 964, 968 (8th Cir. 2024) (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir.

12

2006)). In this case, there is simply no evidence of record to support a finding that either Agent Fox or any other member of the investigative team had any reason to believe the searches of the Pickford and Lilac addresses were illegal despite the issuing judge's authorization. In addition, Defendant has neither asserted nor offered evidence to suggest that Judge Welby abandoned his detached and neutral role in issuing the search warrant; nor has he suggested that the affidavit contained false information or that Agent Fox was dishonest or reckless in preparing the affidavit.

In sum, applying *Leon* to this case, Defendant's motion fails even if the warrants were, as he contends, insufficiently supported by probable cause. The evidence is admissible because it was objectively reasonable for the agents executing the search warrants to have relied on the magistrate judge's determination that there was probable cause to issue the warrants. *United States v. Johnson,* 848 F.3d 872, 879 (8th Cir. 2017).

## II. MOTION TO DISCLOSE CONFIDENTIAL SOURCES 1, 2, AND 3 [ECF NOS. 22 & 40]

Defendant Cotton contends that the United States must disclose the identity of the three confidential informants referenced in the search warrant affidavit prior to trial. ECF No. 40. Defendant does not specify how far in advance of trial such disclosures should be made but argues the identity and relevant discovery for all three confidential sources should be disclosed "early." *Id.* at p. 3-4. In *Roviaro v. United States,* 353 U.S. 53, (1957), the Supreme Court recognized the government's privilege to withhold the identity of informants. This privilege is not absolute. An accused who seeks disclosure of an informant's identity has the burden of showing that the need for disclosure outweighs the government's privilege to withhold the identity of its confidential informants. *U.S. v. Lapsley,* 263 F.3d 839 (8th Cir. 2001) ("*Lapsley I*"). This requirement strikes a balance between the public interest in protecting the source of information and the defendant's right to prepare a defense. *See Roviaro,* 353 U.S. at 62.

The defendant satisfies his burden by showing that disclosure is relevant and helpful to his defense or essential to a fair trial. *Lapsley,* 263 F.3d at 841. The defendant "must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Id.* at 843 (quoting *U.S. v. Harrington,* 951 F.2d 876, 877 (8th Cir. 1991)). While there is no litmus test for determining when disclosure is required, in its opinion after remand of *Lapsley I*, the Eighth Circuit held that "perhaps the most important factor for a court in this circumstance is to consider whether the [informant's] information is material to the defense." *United States v. Lapsley,* 334 F.3d 762, 764 (8th Cir. 2003) ("*Lapsley II*"), cert. denied, *Lapsley v. United States,* 540 U.S. 1184 (2004). The Eighth Circuit has further held that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* When an informant "merely conveys information to the government but neither witnesses nor participates in the offense," disclosure is typically not required. *Id.*

Based on the record before this Court, of the three confidential sources referenced in the search warrant affidavit, only CS-3 directly interacted with the Defendant. Defendant posits that CS-1 and CS-2 are nevertheless material to the defense because they may have additional details about the quantity of drugs sold to Widman or have other potentially exculpatory information. These assertions fall far short of establishing "beyond mere speculation that the informant's testimony will be material to the determination of the case." *Lapsley,* 263 F.3d at 843 (quoting *Harrington,* 951 F.2d at 877). This argument also fails because, as the United States pointed out in its response, the United States does not intend to call those confidential sources as witnesses at trial.

With respect to CS-3, the United States concedes that, based upon his involvement in the controlled buy with Defendant, CS-3 is "an active participant or witness to the offense charged"

14

for which disclosure will almost always be material to the accused's defense." ECF No. 41, at p. 5 (citing *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001)). As such, the United States proposes that to the extent there are materials related to testifying witnesses, including their identity, those materials be proposed 14 days prior to trial. This Court will, of course, defer to the judgment of the trial judge; but finds, based on the record, that requiring the United States to disclose CS-3's identity and related discovery no later than fourteen days before trial is reasonable and should be early enough to allow Defendant time to prepare for, and use the information effectively, at trial.

For the foregoing reasons, Defendant Cotton's motion for disclosure of Confidential Sources 1, 2 and 3 should be denied with respect to CS-1 and CS-2 and granted with respect to CS-3.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence based on insufficiency of the search warrants [ECF Nos. 22 & 36] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion for Disclosure of the Identities of Confidential Sources 1, 2 and 3 [ECF Nos. 22 & 40] be **GRANTED, in part, and DENIED in part**. The Motion should be granted with respect to Confidential Source 3 (CS-3), and it is recommended that CS-3's identity and related discovery be disclosed to Defendant no later than fourteen (14) days before trial. It is recommended that the motion be denied in all other respects.

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination.  Failure to timely file objections may result in waiver of the right to appeal questions of fact.  *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

Trial in this case will be set before the Honorable Henry E. Autrey, by separate order.

15

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: April 29, 2026.